IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NATALIE LUCINDA NIMAKO and )
EMMANUEL NIMAKO, )
    Plaintiffs, )
)
    v. )   Case No. 1:23-cv-730
)
KIMBERLY ZANOTTI, Field Office )
Director, Washington Field Office, U.S. )
Citizenship & Immigration Services, *et al.*,
    Defendants.

## MEMORANDUM OPINION

This matter arises from the final decision of the Board of Immigration Appeals ("BIA") affirming the United States Citizenship & Immigration Services' ("USCIS") decision to deny Natalie Nimako's I-130 alien relative petition to grant a visa to her spouse, Emmanuel Nimako. In short, the BIA justified the denial of Mrs. Nimako's petition on the ground that there was substantial and probative evidence that Mr. Nimako had previously entered into a fraudulent marriage with another person for the purpose of evading immigration law and was thus ineligible for a visa by an immediate relative. Plaintiffs have challenged the BIA's decision on several grounds and the parties have each moved for summary judgment on plaintiffs' claims. Plaintiffs' motion has been fully briefed and argued and is now ripe for resolution.

I.

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, confines judicial review of agency decisions to the administrative record of proceedings before the pertinent agency. *See* 5 U.S.C. § 706; *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973). The

administrative record pertaining to plaintiffs' underlying proceedings before the BIA and USCIS reflects the following relevant facts:

- Emmanuel Nimako is a citizen of Ghana. Mr. Nimako was admitted to the United States on May 22, 2003, on a B-2 non-immigrant tourist visa with authorization to remain in the country until November 18, 2003. In May 2003, Mr. Nimako began to occupy a residence on Manitoba Drive in Alexandria, Virginia.

- On December 15, 2003, around a month after the expiration of his authorized stay, Mr. Nimako married Toni Savoy at the Arlington County Courthouse. On the day of his wedding, Mr. Nimako executed a Form I-485 Application to Register Permanent Residence or Adjust Status premised on his marriage to Ms. Savoy. Three days later, on December 18, 2003, Ms. Savoy executed a Form I-130 on behalf of Mr. Nimako and Mr. Nimako filed his Form I-485.

- Less than seven months after their marriage, on July 4, 2004, Mr. Nimako and Ms. Savoy separated and did not live together again. Neither Mr. Nimako nor Ms. Savoy appeared for an interview scheduled by USCIS for July 13, 2005. The Circuit Court of the City of Alexandria granted Mr. Nimako and Ms. Savoy a divorce on February 23, 2007.

- On March 9, 2007, two weeks after Mr. Nimako and Ms. Savoy were officially divorced, Mr. Nimako married his second wife, Bianca Wiredu.

- On July 20, 2007, Ms. Wiredu executed a Form I-130 on Mr. Nimako's behalf, which USCIS received on July 27, 2007. Mr. Nimako and Ms. Wiredu appeared for an interview in connection with the Form I-130 on July 29, 2008.

- On April 10, 2009, USCIS Fraud Detection and National Security ("FDNS") officers interviewed Eric Amoah, who had pled guilty in 2006 to conspiring to commit immigration fraud in connection with his role in arranging fraudulent marriages. *See United States v. Amoah*, No. 1:06-cr-0447 (E.D. Va. Nov. 8, 2006). During this interview, Mr. Amoah identified Mr. Nimako's marriage to Ms. Savoy as one of the fraudulent marriages that he had arranged. Specifically, in this regard, Mr. Amoah stated that Mr. Nimako's Manitoba Drive residence was "across the street from [Mr. Amoah's] office on Beauregard Street in Alexandria" and that Mr. Nimako had "approached [Mr. Amoah] at his office inquiring about a fraudulent marriage with a U.S. Citizen in order to obtain a green card and to stay in the United States permanently"; that Mr. Nimako paid Mr. Amoah "$2500 to arrange [a] fraudulent marriage"; and that Mr. Amoah's associate (and co-defendant) Robin Crumblin "recruited" Ms. Savoy, who received a portion of the fee Mr. Nimako paid to Mr. Amoah for arranging the fraudulent marriage. USCIS Washington FDNS Office Memorandum (AR0506–11) (hereinafter "FDNS Memo")

- USCIS scheduled a subsequent interview regarding Ms. Wiredu's Form I-130 for August 9, 2011. Although Mr. Nimako appeared at that interview, Ms. Wiredu did not.

- On August 11, 2011, USCIS denied Ms. Wiredu's Form I-130 filed on Mr. Nimako's behalf because she "failed to appear for [the] interview" without "a valid explanation," leading USCIS to consider her application "abandoned." Notice of Decision on I-130 Filed by Bianca Wiredu (AR0867). This decision of the USCIS also noted that Mr. Amoah had identified Mr. Nimako's marriage to Ms. Savoy as one of the fraudulent marriages that he had arranged in connection with his fraudulent immigration marriage scheme.

- On the same day, August 11, 2011, USCIS denied Ms. Savoy's Form I-130 filed on Mr. Nimako's behalf because Ms. Savoy and Mr. Nimako were "no longer married," meaning there was "no current qualifying relationship" supporting the Form I-130. Notice of Decision on I-130 Filed by Toni Savoy (AR0964). This denial also noted the information regarding Mr. Amoah's admission to arranging the fraudulent marriage between Mr. Nimako and Ms. Savoy. Both denials of the Form I-130 were appealed to the BIA and the appeals were denied.

- On August 16, 2011—one week after the USCIS interview and five days after the denial of Ms. Wiredu's Form I-130—Mr. Nimako and Ms. Wiredu entered into a Separation and Property Settlement Agreement. They divorced on September 27, 2011.

- Less than two months after divorcing Ms. Wiredu, on November 19, 2011, Mr. Nimako married Mrs. Nimako. Mrs. Nimako executed a Form I-130 on Mr. Nimako's behalf on March 20, 2012. USCIS received this Form I-130 on or about March 27, 2012.

- On June 28, 2012, the BIA affirmed USCIS's denial of Ms. Savoy's Form I-130, filed on Mr. Nimako's behalf, based on the termination of Mr. Nimako and Ms. Savoy's marriage. On the same day, the BIA dismissed the appeal from USCIS's denial of Ms. Wiredu's Form I-130, filed on Mr. Nimako's behalf, because there was no right of appeal from an abandoned application.

- On or about March 23, 2018, USCIS issued a Notice of Intent to Deny ("NOID") regarding Mrs. Nimako's Form I-130, based on Mr. Amoah's admission to arranging Mr. Nimako's first marriage to Ms. Savoy. In response, Plaintiffs submitted documentary evidence regarding Mr. Nimako's marriage to Ms. Savoy, as well as other documentary evidence.

- On August 14, 2018, USCIS denied Mrs. Nimako's Form I-130 based on the agency's determination that Mr. Nimako's first marriage to Ms. Savoy was fraudulent. Plaintiffs appealed this decision to the BIA on September 12, 2018. The BIA affirmed USCIS's denial of Mrs. Nimako's Form I-130 on March 9, 2020.

The BIA's conclusions that Mr. Nimako's first marriage to Ms. Savoy was fraudulent were based on Mr. Amoah's statement that he had arranged Mr. Nimako's marriage to Ms. Savoy for a fee and that the marriage was fraudulent and entered into for the purpose of obtaining an immigration benefit. *See* BIA Decision (AR0004–0005). The BIA also considered evidence from Mr. Nimako claiming that his marriage to Ms. Savoy was *bona fide*—namely, (i) copies of joint bank account statements, (ii) a statement from Cox Communications verifying a joint cable account, (iii) a joint affidavit from family friends stating that they once went to dinner at the home of Mr. Nimako and Ms. Savoy, (iv) an affidavit from Mr. Nimako, and (v) an affidavit from Mrs. Nimako recounting what Mr. Nimako had told her about his first marriage. Ultimately, however, the agency concluded that the evidence presented by Mr. Nimako was unpersuasive and insufficient to refute the countervailing evidence that the marriage between Mr. Nimako and Ms. Savoy was fraudulent. *See* BIA Decision at AR0004–5.

## II.

Analysis of the question presented properly begins by stating the well-settled principles applicable to judicial review under the APA. Pursuant to the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In this respect, the reviewing court is limited to examining "whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (internal quotation marks omitted). The scope of this review is "narrow," as "[t]he court is not empowered to substitute its judgment for that of the agency." *Id.* Indeed, review of agency action under the

APA is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citation omitted).

Under the APA, a reviewing court may set aside an agency's dispositive factual findings that are not supported by "substantial evidence." *Chao v. Sessions*, 698 F. App'x 751, 752 (4th Cir. 2017) (citing 5 U.S.C. § 706(2)(E)). As the Supreme Court has recently explained, "the threshold for such evidentiary sufficiency is not high" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support" the agency's conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In the Fourth Circuit, the deferential "substantial evidence" test provides that the agency's factual findings may be set aside only if "no reasonable factfinder could agree" with the agency's factual conclusions. *Gandziami-Mickhou v. Gonzales*, 445 F.3d 351, 354 (4th Cir. 2006) (internal quotations omitted). And in this regard, a reviewing court "is not empowered to substitute its judgment for that of the agency." *Holly Hill Farm Corp.*, 447 F.3d at 263.

Next it is necessary to state the statutory and regulatory rules that govern USCIS's and the BIA's adjudications of petitions brought by United States citizens seeking the issuance of an immigrant visa for their relatives. To immigrate legally to the United States, an alien must generally obtain some form of an immigration visa. *See generally* 8 U.S.C. §§ 1151–54. One way to obtain an immigration visa is through the successful petition of a spouse who is already a United States citizen. *See id.* at § 1151(b)(2)(A)(1). Specifically, the citizen-spouse must file an I-130 petition with USCIS requesting that the agency classify the alien as an immediate relative of the citizen-spouse. *See id.* at § 1154(a); 8 C.F.R. § 204.1(a)(1). The citizen-spouse must submit sufficient evidence along with the petition to prove, *inter alia*, "the claimed relationship of the petitioner [citizen] to the beneficiary [alien]." 8 C.F.R. § 204.1(f)(1). USCIS, on behalf of

the Attorney General, must then conduct "an investigation of the facts in each case" to determine whether to grant the petition. 8 U.S.C. § 1154(b). If USCIS "determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative," then the Attorney General "shall . . . approve the petition." *Id.*

On the other hand, USCIS must deny an I-130 petition if USCIS determines that the beneficiary of that petition has at any time entered into a fraudulent marriage in order to obtain an immigration visa, regardless of the legitimacy of the beneficiary's current marriage. *Id.* at § 1154(c). In particular, the applicable regulations provide that USCIS must "deny a petition for immigrant visa classification . . . [when] there is *substantial and probative evidence*" that the alien beneficiary "has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a)(1)(ii) (emphasis added). To find "substantial and probative evidence" that a marriage was established for the purpose of evading the immigration laws, USCIS "may rely on any relevant evidence, including evidence having its origin in prior [USCIS] proceedings involving the beneficiary." *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (B.I.A. 1990).

If USCIS finds any information related to marriage fraud, the regulations require USCIS to issue the petitioner a written NOID which must "specify . . . the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." 8 C.F.R. § 103.2(b)(8)(iv). In addition, the NOID must advise the petitioner of "derogatory information considered by [USCIS] . . . of which the applicant or petitioner is unaware." *Id.* at § 103.2(b)(16)(i). Yet importantly, the regulations do not "require USCIS to provide documentary evidence of the [derogatory] information, but only sufficient information to allow the petitioners to rebut the allegations." *Mangwiro v. Johnson*, 554 Fed. App'x 255, 261

(5th Cir. 2014). In this respect, courts have concluded that an NOID complies with this obligation by "summariz[ing] the contents" of evidence probative of marriage fraud. *Ghaly v. I.N.S.*, 48 F.3d 1426, 1434 (7th Cir. 1995); *see also, e.g., Diaz v. U.S. Citizenship & Immigration Servs.*, 499 F. App'x 853, 855 (11th Cir. 2012); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010); *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009). The petitioner then has an "opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." 8 C.F.R. § 103.2 (b)(16)(i). After receiving the petitioner's evidence, USCIS then decides whether to approve or deny the petition. *Id.* at § 204.2(a)(1)(ii). If USCIS denies an I-130 petition, the petitioner may appeal the decision to the BIA. *See id.* § 1204.1. On appeal, the BIA reviews USCIS's denial of an I-130 petition *de novo. Id.* at § 1003.1(d)(3)(iii). Precisely this occurred here; a thorough NOID notice was issued and petitioner had ample opportunity to rebut the information in the NOID.

### III.

Given the limited scope of judicial review and the clear legal principles governing this case, it is next necessary to consider whether there was substantial and probative evidence to support the BIA's determination that Mr. Nimako's previous marriage to Ms. Savoy was entered into for the purpose of evading immigration laws. Plaintiffs first argue that there was not substantial and probative evidence in this regard. This argument fails because the record evidence reflects that the BIA's factual conclusions were reasonable and amply supported in the record. Thus, there is substantial and probative evidence to support the result reached by the BIA. Given the well-settled deferential standard of review, the BIA's finding of marriage fraud must be confirmed.

Here, the agency's action must stand because the BIA's decision rests on grounds that are supported by substantial evidence in the record. Indeed, it cannot be said that no reasonable factfinder could agree with the BIA's conclusion. *See Gandziami-Mickhou*, 445 F.3d at 354. On April 10, 2009, USCIS and ICE investigators obtained statements from Eric Amoah that he had arranged Mr. Nimako and Ms. Savoy's marriage as part of a large-scale marriage fraud ring. *See* BIA Decision at AR0004–0005; *see also* FDNS Memo at AR0507. During the interview with USCIS FDNS officials, Mr. Amoah reviewed photos and evidence that USCIS officers had determined to be suspect and identified individuals involved in fraudulent marriages. Mr. Amoah identified the marriage between Mr. Nimako and Ms. Savoy as one of the fraudulent marriages he had "arranged/facilitated" for the purpose of gaining a marriage benefit. *Id.* Mr. Amoah stated that Mr. Nimako approached Mr. Amoah at Mr. Amoah's office inquiring about a fraudulent marriage that would allow Mr. Nimako to remain in the United States. Mr. Amoah stated that Mr. Nimako initially paid Mr. Amoah $2,500 to arrange the fraudulent marriage. Ms. Savoy was paid $1,000 from this fee. Statements from the organizer of fraudulent marriage schemes, like Mr. Amoah's statement here, are a common and acceptable form of evidence on which immigration authorities may rely. *See, e.g., Owusu-Boakye v. Barr*, 836 F. App'x 131, 137 (4th Cir. 2020) (relying on statement from Mr. Amoah himself); *Pauliukoniene v. Holder*, 496 F. App'x 657, 660 (7th Cir. 2012) (relying on statement from the organizer of a fraudulent marriage scheme). Mr. Amoah's statements alone are sufficient to provide substantial evidence for the BIA's decision.

Although the BIA did not rest on this fact, Mr. Amoah's representations were corroborated by other record evidence, including that Mr. Nimako, as Mr. Amoah stated, lived on Manitoba Drive during the relevant period and that Mr. Nimako and Ms. Savoy were married in the Arlington County Courthouse, where Mr. Amoah operated his fraudulent marriage scheme,

even though Mr. Nimako and Ms. Savoy lived in Alexandria at the time. FDNS Memo at AR0510. Moreover, Mr. Nimako was unable to answer basic questions about Ms. Savoy's family and background, including the names of her sons, the name of her mother, and whether Ms. Savoy had any siblings. FDNS Memo at AR0510. Although Mr. Nimako's ignorance of these basic facts about Ms. Savoy may not by itself be sufficient to conclude that Mr. Nimako and Ms. Savoy's marriage was fraudulent, his ignorance of those facts further supports the conclusion that Mr. Nimako and Ms. Savoy's marriage was fraudulent and entered into so as to evade immigration laws. *See, e.g., Yu An v. Napolitano*, 15 F. Supp. 3d 976, 981 (N.D. Cal. 2014) (citing inconsistencies in testimony and documentation regarding residencies in support of the conclusion that the administrative record contained substantial evidence of marriage fraud). Nor are any of the typographical errors or minor inconsistencies in the record cited by the Plaintiffs sufficient to undermine the well-supported conclusion that USCIS and the BIA had substantial evidence for their decisions.

Mr. Nimako attempts to put forward evidence to show that his marriage with Ms. Savoy was *bona fide*, but the evidence provided by Mr. Nimako is flimsy and, in many ways, undermines his own claims of the marriage's legitimacy. Mr. Nimako provided copies of joint bank account statements with Ms. Savoy, a statement from Cox Communications verifying a joint cable account, an affidavit from family friends stating that they once went to dinner at the home of Mr. Nimako and Ms. Savoy, an affidavit from Mr. Nimako, and an affidavit from Mrs. Nimako recounting what Mr. Nimako had told her about his first marriage. However, the BIA concluded that this "meager evidence" was insufficient to conclude that Mr. Nimako and Ms. Savoy's marriage was *bona fide* in light of the countervailing evidence. BIA Decision at AR0005. The BIA's conclusion in this regard is reasonable. The bank account statements are

from late 2006 and from 2011—strange timing given that Mr. Nimako and Ms. Savoy separated in July 2004 and divorced in February 2007. Bank Account Statements (AR0188–90). That Ms. Savoy was still listed on the account seven years after her separation from Mr. Nimako and four years after their divorce calls into question whether Ms. Savoy ever truly had access to the account. The cable records also fail to support Mr. Nimako's claim as the subscription does not begin until January 25, 2005—six months after Mr. Nimako and Ms. Savoy separated and permanently ceased living together. Letter from Cox Communications (AR0188). Moreover, the cable account is not for the Manitoba Drive address that the two claimed to have shared, but rather for the address at which Mr. Nimako later represented that he lived after the separation. G-325, Biographic Information (AR0986). Additionally, Mr. Nimako criticizes USCIS for failing to credit Mr. Nimako's assertion that he had never met Mr. Amoah, but this self-serving statement is insufficient to undermine the agency's conclusion to the contrary. In sum, the evidence Mr. Nimako presents falls far short of persuasively undermining the BIA's well-supported conclusions that Mr. Nimako's marriage to Ms. Savoy was fraudulent.

## IV.

Plaintiffs next argue that the Defendants violated plaintiffs' right to due process through delay and in relying on Mr. Amoah's statements without providing plaintiffs an opportunity to cross-examine Mr. Amoah. This argument fails because plaintiffs have not demonstrated that the BIA failed to provide plaintiffs with due process during the adjudication of plaintiffs' I-130 petition.

Even assuming *arguendo* that plaintiffs can establish a constitutionally protected interest in residing with an alien spouse in the United States, which is doubtful,[1] the agency's adjudication of the I-130 petition afforded plaintiffs adequate procedural protections. At bottom, due process requires only "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). This occurred here; plaintiffs had a meaningful opportunity to be heard at a meaningful time and in a meaningful manner. In this respect, the majority of courts in the wake of *Kerry* have held that, even assuming a plaintiff who has filed an I-130 visa petition on behalf of his or her spouse has a liberty interest in residing in the United States with his or her spouse, USCIS and the BIA nonetheless satisfy due process in their adjudication of the I-130 petition by (i) issuing an NOID or a notice of intent to remove that lists, in detailed fashion, the reasons why USCIS intends to deny the petition, (ii) giving the petitioner an opportunity to present evidence to attempt to persuade USCIS to grant the petition, and (iii) issuing a decision that specifies facially legitimate reasons for denying the petition.[2] Here, as required by regulation, the record establishes that plaintiffs received notice of USCIS's intent to deny Mrs. Nimako's Form I-130 based on the

---

[1] The Supreme Court's recent decision in *Kerry v. Din*, 576 U.S. 86 (2015), left the question unresolved. See discussion in *Owusu-Boakye v. Barr*, 376 F. Supp. 3d. 663, 680–82 (E.D. Va. 2019), *aff'd*, 836 F. App'x 131 (4th Cir. 2020).

[2] *See, e.g., Gyau v. Whitaker*, 2019 WL 1063372, at *5 (E.D. Va. Mar. 6, 2019) ("[T]he NOID process satisfied any due process rights Plaintiffs held before the BIA and USCIS."); *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) (same); *Bremer v. Johnson*, 834 F.3d 925, 932–33 (8th Cir. 2016) (same); *Zizi v. Bausman*, 306 F. Supp. 3d 697, 708–09 (E.D. Pa. 2018), *aff'd sub nom. Zizi v. Field Office Dir.*, 753 F. App'x 116 (3d Cir. 2019) (same); *Bourdon v. Sessions*, No. 9:17-CV-80207, 2017 WL 5187833, at *6 (S.D. Fla. Nov. 9, 2017); *Ali v. United States*, No. 15-CV-201, 2016 WL 3190190, at *8 (D.N.H. June 7, 2016), *aff'd*, 849 F.3d 510 (1st Cir. 2017) (same); *Desmore v. Dep't of Homeland Sec.*, No. CV G-14-191, 2016 WL 561176, at *4–5 (S.D. Tex. Feb. 12, 2016) (same); *Armah-El-Aziz v. Zanotti*, No. 1:15-CV-261, 2015 WL 4394576, at *7–8 (E.D. Va. July 16, 2015) ("[T]o the extent any deprivation occurred, the NOID procedure was more than the due process clause requires.").

derogatory information provided by Mr. Amoah and that plaintiffs then had the opportunity to respond, which they did by submitting the documentation aimed at proving that Mr. Nimako and Ms. Savoy's marriage was *bona fide*. Especially given the weakness of the evidence plaintiffs submitted, no more was required.

Plaintiffs contend that USCIS "delayed" issuing the NOID until 2018, which plaintiffs assert deprived them of a meaningful opportunity to respond to Mr. Amoah's derogatory information given the passage of time since Mr. Nimako's marriage to Ms. Savoy and her death in 2013. But Mr. Nimako was put on notice of USCIS's allegations that his marriage to Ms. Savoy was fraudulent on August 11, 2011—two years before Ms. Savoy died. Specifically, at the time USCIS denied Ms. Wiredu's Form I-130 filed on Mr. Nimako's behalf, USCIS informed Mr. Nimako that Mr. Amoah had identified Mr. Nimako's marriage to Ms. Savoy as fraudulent. Notice of Decision on I-130 Filed by Bianca Wiredu (AR0865–68). Moreover, on March 20, 2012, when Mrs. Nimako filed the Form I-130 at issue, Ms. Savoy was still alive. When Mrs. Nimako filed the Form I-130 at issue, Mr. Nimako both knew of his potential ineligibility based on an allegedly fraudulent marriage with Ms. Savoy and the risks that posed to his third I-130 application and had the ability to obtain any necessary statements or documents from Ms. Savoy. Accordingly, plaintiffs cannot claim to have suffered any due process violation on account of the timing of the 2018 NOID.

## V.

Nothing here is intended to call into question the legitimacy of Mr. and Mrs. Nimako's marriage. The result reached here is the consequence of Mr. Nimako having fraudulently married Ms. Savoy two decades ago. Unfortunately for Mr. and Mrs. Nimako, Congress has determined

that entering into a sham marriage renders a noncitizen permanently ineligible for an immediate relative visa. *See* 8 U.S.C. § 1154(c). Mr. Nimako's poor decision many years ago precludes the success of Mrs. Nimako's I-130 petition however legitimate Mr. and Mrs. Nimako's present marriage may be.

    An appropriate Order will issue.

Alexandria, Virginia
December 22, 2023

/s/
T. S. Ellis, III
United States District Judge